## George W. Owen v. Union Match Company.

*Oral contract—Evidence of preliminary negotiations—Damages for failure to furnish work—Evidence as to quantity of work contracted for—Hearsay—Joint interest in contract.*

Where a contract is sued upon as made orally it is proper to allow proof of all of the conversation and negotiations between the parties prior to the conclusion of the alleged contract as bearing on their relations and tending to show the real nature of the agreement.

Evidence that the defendant at a time subsequent was not furnishing in fact, and did not appear likely to be able to furnish, all the stipulated work, has no tendency to show that no agreement was made to furnish a specified amount.

When a plaintiff sues for failure to furnish him employment, proof that he has obtained it from other sources is proper in reduction of damages.

An estimate of the number of printed labels requisite to supply various match factories, based on hearsay, and without furnishing any *data* on which it is founded, is not proper testimony of the amount required for that purpose, and its admission, to prove the improbability that a contract would be made for printing so large a number as that claimed to have been agreed on for defendant's factory, was erroneous.

Where the defence introduced testimony to show other persons to have been joint partners with plaintiff to the contract, it was error not to allow rebutting evidence to show the contrary.

Error to Superior Court of Detroit. Submitted April 20. Decided April 25.

Assumpsit. Plaintiff brings error. Reversed.

*M. E. Dowling* for appellant. It cannot be shown in defence to an action on a contract that the amount of work agreed upon was more than defendant could use: *Merrill v. Smith* 11 Ala. 569; *Kendall v. Vallejo* 1 Cal. 371; *Anderson v. Moncrieff* 3 Des. 124; *Campau v. Moran* 31 Mich. 281.

*F. H. Canfield* (*Moore, Canfield & Warner*) for appellee.

CAMPBELL, J. Plaintiff sued defendant for not furnish-ing work as agreed. The substance of the complaint was that an agreement was made whereby plaintiff was to set up in a room in defendant's match factory the appliances neces-sary for doing their printing, and that he was to have room and power free for a year, and to have the printing of 17,000 sheets of labels a day, and job work in addition, amounting beyond the label printing to at least $5.30 a day. That this amount of work was not furnished while the defendant did business, and that during the year the defendants sold out to another company, and plaintiff lost the work and the office privileges thereby and thereafter.

The defendant denies the substance of the contract, and claims also that the work was not done by plaintiff alone, but by his firm.

Many errors are assigned, but the argument has been narrowed down to a few of them, and defendant claims the contract shown is fatally variant from the one alleged, and renders the errors immaterial if otherwise sufficient.

Upon the question of variance, we observe that no point seems to have been made on it below, and further that while the evidence was contradictory there was in our opinion no material variance beyond amendment in the plaintiff's case. The chief controversy was on the facts.

The contract was verbal, and made, if at all, with T. C. Owen, as president of defendant. As it was the result of conversations between the parties, we do not think there was error in allowing all the conversation between them prior to the contract and relating to plaintiff's business to be shown. It all had some tendency to explain their relations concerning the negotiation.

Objection was made to certain testimony given by T. C. Owen concerning a personal interview several weeks after the contract was alleged to have been made, in which plaintiff, who is his brother, was anxious to provide for some maturing paper, and some calculation was made as to how much work the defendant would furnish, and how much plaintiff could get outside,—as a basis for ascertaining

the prospects of saving money to meet the paper if renewed. The amount of work likely to come in from the company was very much less than the sum agreed.

Defendant claims this was in the nature of an admission of the amount he had a right to expect or would be satisfied with. But T. C. Owen expressly testifies that in this matter he was acting as a brother, and did not represent the defendant. If this is so, we do not see how the fact that defendant was not furnishing or at that time likely to furnish all the work claimed to have been agreed upon, tends to show there was no agreement.

We think it was entirely competent to show in mitigation of damages any work which plaintiff had done or been able to obtain from other persons. We do not see how this case differs from any other case in which the person deprived of one employment has not lost his time entirely by the deprivation.

There was also testimony given to show how many matches could be labelled from 17,000 sheets containing each a certain number. This would be of no consequence if it appeared how many packages there were to label, as any one could figure it up for himself, and no correct computation could do any harm.

But it was also allowed to defendant to show by the testimony of the witness Force that defendant made three sizes of boxes, and that the average of their work was two hundred gross, that would take 72 labels to a gross, and their results were 200 gross a day, while the 17,000 sheets of the number of labels propounded would at this rate mark 7000 gross of matches a day. On this basis he undertook to swear it would supply a dozen of the largest factories in the country; but he showed no knowledge except from hearsay either of the work of other factories or of how many boxes contained the quantity allowed to the ordinary gross of boxes.

This testimony was not proper. It appeared on the face of it to be a conclusion, even as to the defendant's own work, without proper *data*. As every gross contains 144,

the allowance of 72 labels to the gross is evidently on the basis of a departure from the standard unit of boxes. At the rate of 144 boxes to the gross, the number of gross required to use up the labels would be reduced one-half, and the four factories first named by him would require more than double the number of labels furnished by 17,000 sheets. It is obvious that the effect of this testimony on the probability of the defendant's contracting so largely was greatly prejudicial to the plaintiff as showing it to be extravagant. It was not only hearsay, but it did not show on what method of packing and labelling even the result from that hearsay was based. We are not prepared to say that evidence that plaintiff knew what amount of business was to be done by defendant, and what amount of labels it would need, would not be pertinent as rendering it unlikely that a contract could have been intended which greatly exceeded this calculation. But evidence of the disproportion would have no force unless plaintiff knew it to be extravagant. And evidence such as was given by Force without the elements of calculation is not much better than guess-work, and so far as it was hearsay was doubly inadmissible.

There was some other testimony concerning transactions foreign to this contract and unknown to plaintiff the pertinency of which does not appear. And we are of opinion that after defendant had introduced testimony to connect others than the plaintiff with the contract, he should have been allowed in rebuttal to show by those persons that they were strangers to it.

The judgment must be reversed with costs and a new trial granted.

CooLEY and MARSTON, JJ. concurred